**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| ELIZABETH DOHENY, | |
| Plaintiff, | Case No. 1:19-cv-05869 |
| v. | Honorable Jorge L. Alonso |
| NATIONSTAR MORTGAGE LLC d/b/a MR. COOPER, and CYPREXX SERVICES, LLC, | Honorable Jeffrey T. Gilbert Magistrate Judge |
| Defendants. | |

**FIRST AMENDED COMPLAINT**

**NOW COMES**, ELIZABETH DOHENY, through her undersigned counsel, submitting her first amended complaint against NATIONSTAR MORTGAGE LLC d/b/a MR. COOPER and CYPREXX SERVICES, LLC, as follows:

**NATURE OF THE ACTION**

1.     This action is seeking damages for breach of contract, intentional infliction of emotional distress, intrusion upon seclusion, trespass to property, and violations of the Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/1 *et seq.*).

**PARTIES**

2.     ELIZABETH DOHENY ("Plaintiff") is a natural person, over 18-years-of-age, who at all times relevant resided in Barrington, Illinois. Plaintiff is domiciled in and is a citizen of the State of Illinois (Barrington, Illinois). At all times relevant, Plaintiff had a property interest in real estate located at 2323 Grove Lane, Cary, Illinois 60013.

3.     NATIONSTAR MORTGAGE LLC d/b/a MR. COOPER ("Nationstar" or "Mr. Cooper") is a limited liability company organized under the laws of the State of Delaware, and is

1

an indirect, wholly-owned subsidiary of Nationstar Mortgage Holdings, Inc., a Delaware corporation. Nationstar is directly owned by two entities: (1) Nationstar Sub1 LLC ("Sub1") (99%) and (2) Nationstar Sub2 LLC ("Sub2") (1%) (collectively, Nationstar's members). Both Sub1 and Sub2 are Delaware limited liability companies that are 100% owned by Nationstar Mortgage Holdings Inc. Nationstar, Sub1, Sub2, and Nationstar Mortgage Holdings, Inc. each maintain their principal place of business at 350 Highland Drive, Lewisville, Texas 75067. Sub1 and Sub 2 are citizens of the State of Texas.

4. Nationstar is a national mortgage originator and servicer. Nationstar originates and services thousands of mortgage loans nationwide.

5. CYPREXX SERVICES, LLC ("Cyprexx") is a limited liability company organized under the laws of the State of Delaware. Cyprexx is owned by five individual members: Brett Ory, Linda Ory, Ronnie J. Ory, RJ Ory, and Rhonda Ory Williams. Each member is domiciled in Brandon, Florida and is a citizen of the State of Florida. Cyprexx maintains its principal place of business at 525 Grand Regency Boulevard, Brandon, Florida 33510.

6. Cyprexx is a national field services company that regularly works with mortgage servicers to secure and preserve properties.

## JURISDICTION AND VENUE

7. This Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because this action involves citizens of different states and the amount in controversy exceeds $75,000.

8. Venue in the Northern District of Illinois is proper pursuant to 28 U.S.C. § 1391(b)(2) because Defendants conduct business in this District and a substantial part of the events or omissions giving rise to the claims occurred in this District.

## FACTUAL ALLEGATIONS

9.     On February 7, 2014, Plaintiff executed a mortgage ("subject mortgage") in favor of Mortgage Electronic Registration Systems, Inc. as nominee for Nationstar Mortgage LLC.

10.     The subject mortgage secured the purchase of real property located at 2323 Grove Lane, Cary, Illinois 60013 ("subject property").

11.     The subject mortgage secured a promissory note executed by Plaintiff's former husband, Thomas M. Doheny ("Mr. Doheny"), in the amount of $269,055.00 in favor of Nationstar Mortgage LLC ("subject loan").

12.     Plaintiff and Mr. Doheny held  title to the subject property as joint tenants.

13.     The subject property largely served as a secondary residence for Plaintiff and Mr. Doheny.

14.     Plaintiff and Mr. Doheny have four children and always maintained a high standard of living as Mr. Doheny maintained very lucrative employment.

15.      Ms. Doheny was a homemaker and did not work for the vast majority of her marriage to Mr. Doheny.

16.     In 2017, Plaintiff and Mr. Doheny made substantial renovations and upgrades to the subject property, including renovations to the basement, new carpeting, new furniture and other various cosmetic work.

17.     The Doheny's marriage deteriorated, ultimately leading to a legal dissolution of marriage in 2017.

18.     On November 17, 2017, Mr. Doheny tragically passed away.

19.     At the time of Mr. Doheny's death, the subject loan was current.

3

20. Mr. Doheny's tragic death was unexpected and left Plaintiff in dire financial circumstances as the maintenance payments per the marital settlement agreement were Plaintiff's primary source of income.

21. Shortly after Mr. Doheny's death, the subject loan went into default.

22. After Mr. Doheny's death, Plaintiff listed the subject property for sale.

23. In December 2017, Plaintiff contacted Mr. Cooper to inform them of Mr. Doheny's death.

24. Upon information and belief, in early January 2018, Mr. Cooper hired and directed Cyprexx to perform property preservation services at the subject property.

25. At the time Mr. Cooper hired Cyprexx, the subject property was in excellent condition, fully furnished, and by no means vacant or abandoned.

26. On January 21, 2018, Plaintiff, Plaintiff's brother, and Plaintiff's daughter went to the subject property for a scheduled showing for a prospective buyer.

27. While at the subject property, an unfamiliar vehicle pulled into the driveway of the subject property.

28. Plaintiff's brother approached the vehicle and greeted the individual in the vehicle.

29. The individual in the vehicle advised Plaintiff's brother that he was hired by "a mortgage company" to determine if the subject property was vacant.

30. Plaintiff's brother advised the individual that the subject property was not vacant and the individual left the subject property.

31. Upon information and belief, the individual was an employee and/or agent of Cyprexx.

32. On January 24, 2018, Plaintiff again visited the subject property.

4

33.     Upon approaching the front door, Plaintiff discovered (a) that the locks were changed; (b) that a lock box was installed; and (c) that the front door was damaged.

34.     Plaintiff was not able to gain entry through the front door but was able to gain entry through the back door.

35.     Plaintiff entered the subject property and discovered (a) that the water was turned off; (b) the heat lowered, and (c) food missing from two refrigerators.

36.     Moreover, Plaintiff discovered adhesive notes affixed to the sinks, doors, and toilets that displayed Cyprexx's name.

37.     Enraged by the unauthorized trespass to the subject property, Plaintiff immediately called Mr. Cooper to inquire about the trespass.

38.     During the phone call with Mr. Cooper, Plaintiff advised a Mr. Cooper representative that someone entered her home without authorization and (a) turned off the water; (b) lowered the heat; and (c) stole food from the refrigerators.

39.     In response, the Mr. Cooper representative advised Plaintiff that Cyprexx told Mr. Cooper that the subject property was vacant/abandoned and based on that belief, Mr. Cooper ordered Cyprexx to "winterize" the subject property.[1]

40.     Plaintiff responded by advising the Mr. Cooper representative that Plaintiff's brother explicitly told the individual that visited the subject property on January 21, 2018 (a Cyprexx employee/agent) that the subject property was not vacant.

---

[1] "Winterization" is service in which the main water supply is turned off to prevent the pipes from freezing and subsequently rupturing, causing major water damage to a property.

5

41.     Moreover, Plaintiff advised Mr. Cooper's representative that she had been in constant communication with Mr. Cooper and that Mr. Cooper had actual knowledge that the subject property was not vacant.

42.     In response, Mr. Cooper's representative advised Plaintiff that it had reason to believe the subject property was vacant but that Cyprexx had no right to steal food from the refrigerators, and recommended that Plaintiff file a police report against Cyprexx.

43.     Moreover, the Mr. Cooper representative recommended that Plaintiff submit a formal complaint with Cyprexx.

44.     Lastly, Mr. Cooper directed Plaintiff to call "George," presumably a Cyprexx employee, and request that Cyprexx "un-winterize" the subject property.

45.     A few days later, Mr. Cooper sent an agent to the subject property to "un-winterize" the subject property by turning the water supply back on. Plaintiff was present during this "un-winterization."

46.     Shortly thereafter, Plaintiff and her daughter visited the subject property.

47.     Upon arrival, Plaintiff discovered multiple notes displaying Cyprexx's name affixed on the front door stating that the subject property was vacant and that security cameras had been installed.

48.     The notes further indicated that Cyprexx had completed services at the subject property.

49.     In a state of shock and disbelief, Plaintiff and her daughter left the subject property and went to a local restaurant for lunch.

50.     Upon returning to the subject property after lunch, Plaintiff discovered that someone had entered the subject property between the time she went to lunch and returned.

6

51. Specifically, Plaintiff discovered that the lights and radio were turned off, both which were on when Plaintiff and her daughter went to lunch.

52. Believing that someone may still be in the subject property, Plaintiff searched the home to confront the intruder.

53. During her search, Plaintiff discovered a heavily flooded basement (up to 3 inches of water) and fresh footprints embedded in the wet carpet.

54. While in the basement, Plaintiff discovered that the fish in the fish tank had been removed.

55. The fish had significant sentimental value, as they belonged and were adored by Mr. Doheny.

56. Plaintiff continued searching the subject property and discovered that an electrical plate was removed from one of the bedrooms.

57. Worried about her and her family's safety, Plaintiff called the McHenry County Sheriff's Department.

58. Shortly thereafter, Officer McKenzie from the McHenry County Sheriff's Department arrived at the subject property.

59. Plaintiff advised Officer McKenzie of the events and the unauthorized trespass to the subject property.

60. After hearing Plaintiff's account of the events, Officer McKenzie advised Plaintiff that he believed that the mortgage company (Mr. Cooper) was likely responsible for the damage, possibly in an attempt to deem the property vacant/abandoned in order to expedite the foreclosure process.

61.     Plaintiff provided Officer McKenzie with Cyprexx's contact information, which was contained on the notes throughout the subject property.

62.     Officer McKenzie called Cyprexx and cautioned them to stay away from the subject property.

63.     Shortly thereafter, Plaintiff submitted a claim for compensation to Cyprexx.

64.     To date, Plaintiff has not been compensated for the damages to the subject property.

65.     At no time did Defendants provide Plaintiff with notice that they will be inspecting and/or entering the subject property.

66.     Moreover, upon and information and belief, Defendants entered Plaintiff's home on numerous additional occasions without Plaintiff's authorization.

67.     Specifically, the fish that were removed from the fish tank magically reappeared after Plaintiff's initial call with Mr. Cooper regarding the trespass to the subject property.

68.     In response to the additional intrusions, Plaintiff filed numerous police reports with the McHenry County Sheriff's Department.

## DAMAGES

69.     Plaintiff was very vulnerable at the time of Defendants' egregious conduct. Specifically, Plaintiff and her family were in the grieving process following Mr. Doheny's tragic death.

70.     Plaintiff suffered significant damages that were proximately caused by Defendants' conduct.

71.     Specifically, as a result of Defendants' collective conduct, Plaintiff has suffered extreme emotional distress, anxiety, and mental anguish resulting from (a) the constant fear that

the subject property will be broken into again; and (b) the deprivation of the sense of security and safety in the subject property.

72.     Moreover, Defendants' conduct resulted in significant damage to the subject property and its contents, including, water damage to the following:

      i.   basement, basement walls, and carpet;

      ii.  personal property and furnishings situated in the basement, including but not limited to, beds, bookcases, chairs, desk, dressers, nightstand, sofa, and tables;

     iii.  personal property and furnishings situated in the family room located in the basement, including but not limited to, leather sofa, leather loveseat, Lazy Boy massage chair; two end tables, and cocktail table;

     iv.  personal property and furnishings situated in the bedrooms in the basement, including but not limited to, full size bed, two twin beds, dressers, nightstand, desk, bookcase, various artworks and paintings, and board games and toys.

73.     Furthermore, Defendants' conduct resulted in the following additional damages:

      i.   burst water pipes;

      ii.  mold buildup on the walls and ceiling;

     iii.  incidental damage to the heating system, which is dependent on a water boiling system.

74.     Plaintiff's property damages as set forth above are in excess of $85,000.00 (includes replacement costs of damaged personal property and furnishings).

75.     Moreover, the damages caused by Defendants' conduct have significantly decreased the value of the subject property, thus frustrating Plaintiff's ability to sell the subject property for a profit.

76.     As a result of Defendants' conduct, Plaintiff has been unable to sell the subject property in light of its uninhabitable condition.

77. As a result of Defendants' conduct, Plaintiff has and continues to suffer from extreme emotional distress and mental anguish, which has resulted in countless sleepless nights and never-ending stress.

78. As of the date of the filing of this lawsuit, Defendants have not made any effort to compensate Plaintiff for her losses.

## CAUSES OF ACTION

### COUNT I – BREACH OF CONTRACT (AGAINST MR. COOPER)

79. Plaintiff incorporates all preceding paragraphs as though fully stated herein.

80. The subject mortgage is a valid and enforceable contract between Plaintiff, Mr. Doheny, and Mortgage Electronic Registration Systems, Inc. as nominee for Nationstar Mortgage LLC ("contract").

81. As set forth above, Nationstar Mortgage LLC and Mr. Cooper are the same entity.

82. The contract provides:

**7. Preservation, Maintenance and Protection of the Property; Inspections.**

**…**

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. *Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause*. (emphasis added).

83. The contract further provides:

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.**

If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property

and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and security and/or repairing the Property.

84.     Mr. Cooper breached the contract by entering the subject property without giving Plaintiff notice, without Plaintiff's consent, and without reasonable cause.

85.     Although the contract authorized Mr. Cooper to "inspect" the subject property, the contract did not authorize Mr. Cooper to do so without reasonable cause.

86.     Mr. Cooper breached the contract by forcibly entering the subject property that was neither vacant or abandoned.

87.     As pled above, Plaintiff was severely harmed by Defendants' conduct.

88.     Moreover, Plaintiff is entitled to punitive damages stemming from Mr. Cooper's breach of contract as Mr. Cooper's breach constitutes an independent and willful tort accompanied by wantonness or oppression. *See Hunter Douglas Metals, Inc. v. Edward C. Mange Trading Co.,* 586 F. Supp. 926, 929 (7th Cir. 1984) (finding that where a breach of contract contains allegations sufficient to support both a contract claim and an independent tort, both may stand and punitive damages may be awarded if plaintiff is able to sustain his burden under the tort theory.)

**WHEREFORE**, Plaintiff, ELIZABETH DOHENY, respectfully requests that this Honorable Court:

a.     Find that Mr. Cooper materially breached the contract;

b.     Enter judgment in her favor and against Mr. Cooper;

c.     Award Plaintiff her actual damages;

d.     Award Plaintiff  punitive damages; and

e.     Award Plaintiff any further relief this Honorable Court deems equitable and just.

## COUNT II – TRESPASS TO REAL PROPERTY
### (AGAINST MR. COOPER AND CYPREXX)

89.     Plaintiff incorporates all preceding paragraphs as though fully stated herein.

90.     At all times relevant, Plaintiff jointly owned the subject property and had a legal right to exclusive possession of the subject property.

91.     Defendants had actual knowledge that Plaintiff jointly owned and adequately maintained the subject property.

92.     Without consent or a right to possession, Defendants forcibly entered and assumed dominion and control of the subject property.

93.     Without consent or a right to possession, Defendants placed a lock on the front door of the subject property, thus depriving Plaintiff of immediate access to the subject property.

94.     Defendants' forced entry and trespass upon the subject property interfered with Plaintiff's possession, ownership, use, and enjoyment of the subject property.

95.     Upon information and belief, it is Defendants' normal business practice to ignore possessory and ownership rights of homeowners, and to illegally take possession of properties without consent or a court order, in conscious disregard of the rights of homeowners.

96.     As pled above, Plaintiff was severely harmed by Defendants' conduct.

**WHEREFORE**, Plaintiff ELIZABETH DOHENY respectfully requests that this Honorable Court:

a.      Find that Defendants unlawfully trespassed on the subject property;

b.      Enter judgment in her favor and against Mr. Cooper and Cyprexx;

c.      Award Plaintiff her actual damages;

d.      Award Plaintiff punitive damages; and

12

     e.     Award Plaintiff any further relief this Honorable Court deems equitable and just.

### COUNT III – VIOLATIONS OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT
### (AGAINST MR. COOPER AND CYPREXX)

97.     Plaintiff incorporates all preceding paragraphs as though fully stated herein.

98.     Plaintiff is a "person" as defined by 815 ILCS 505/1(c).

99.     Plaintiff is a "consumer" as defined by 815 ILCS 505/1(e).

100.     Mr. Cooper is engaged in "commerce" as defined by 815 ILCS 505/1(f).

101.     Cyprexx is engaged in "commerce" as defined by 815 ILCS 505/1(f).

102.     Section 2 of the Illinois Consumer Fraud and Deceptive Business Practices Act provides:

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false, pretense, false promise, misrepresentation or the concealment, suppression, or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in section 2 of the "Uniform Deceptive Trade Practices Act", approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived, or damaged thereby. In construing this section consideration shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to section 5(a) of the Federal Trade Commission Act.

103.     Defendants violated 815 ILCS 505/2 by engaging in the following unfair and deceptive acts or practices in the course of mortgage servicing and/or property management/preservation services:

     a.     Representing to Plaintiff, either expressly or by implication, and with the intent that Plaintiff rely on such representation, that Plaintiff is not entitled to occupy the subject property when Plaintiff is, in fact, entitled to occupy the subject property;

13

b. Intimidating Plaintiff by habitually sending agents to the subject property and posting notices stating that the subject property is abandoned/vacant while Plaintiff legally owned and maintained the subject property;

c. Unlawfully breaking into Plaintiff's property;

d. Taking control and asserting dominion over the subject property without a court order authorizing the same;

e. Employing self-help and taking possession of the subject property outside the judicial process mandated by the Illinois Mortgage Foreclosure Law ("IMFL") (defining possessory rights and the prohibition against harassment or intimidation to compel occupants to abandon mortgaged property).

f. Changing the locks of the front door of the subject property without having a valid license required by the Illinois Locksmith Act;

g. Turning off the water in the subject property;

h. Causing major damage to the subject property and its contents;

i. Unlawfully removing personal property from the subject property;

j. Affixing notices throughout the subject property, thus exhibiting dominion and control over the subject property, and implying that Plaintiff has lost her ownership rights to the subject property;

k. Failing to adequately manage, supervise and train their employees and agents in the performance of property inspection and preservation services.

104.    It was unfair and deceptive for Defendants to erroneously deem the subject property "vacant" or "abandoned" when Defendants had actual knowledge that the subject property was not vacant or abandoned.

105.    It was unfair and deceptive for Defendants to erroneously deem the property "vacant" or "abandoned" despite the fact that the subject property was conspicuously furnished and well-maintained.

106.    Defendants intended that the Plaintiff would rely on their unfair and deceptive acts; their overall scheme was designed to disturb Plaintiff's ownership of the subject property and designed to buffalo Plaintiff into giving up her property without having to go through the foreclosure process.

107.    Plaintiff relied upon Defendants' acts and representations and was deceived into questioning her legal ownership rights in the subject property, doubting her right to enjoy ownership of the subject property free of invasion, believing a court order was unnecessary, becoming afraid to enjoy ownership rights of subject property, and losing the peaceful enjoyment and solitude of the subject property.

108.    Defendants' conduct offends public policy as it demonstrates an industry-wide practice of maximizing profits by ignoring the possessory rights of homeowners in violation of the law, expediting the foreclosure process by circumventing the law, and profiting from the expedited sale of real property.

109.    Plaintiff had no choice but to submit to Defendants' conduct. Specifically, Plaintiff had no control over (1) the changing of the lock; (2) the significant damages to the subject property; and (3) her inability to enjoy the benefits of ownership of the subject property.

110.    Defendants' course of conduct is part of a pattern and practice of behavior that Defendants routinely participate in.

111.    As pled above, Plaintiff was severely harmed by Defendants' conduct.

112.    Defendants' course of conduct further implicates consumer protection concerns generally as consumers reasonably expect:

        a.      to be safe and secure in their own property;

15

b.    their mortgage companies to communicate with them accurately and truthfully regarding the occupancy status of their home or any claims of abandonment/vacancy;

c.    their mortgage companies to refrain from illegal self-help to expedite a foreclosure and bully consumers from their property;

d.    their mortgage companies to follow state and federal law and their own guidelines;

e.    their mortgage companies to adhere to consumer protection laws/statutes as well as investor/mortgage servicing guidelines.

f.    their mortgage companies will not take illegal action to expedite a foreclosure and bully consumers from their property.

113.    An award of punitive damages is appropriate because Defendants' conduct was outrageous, willful, wanton, showed a reckless disregard for the rights of the Plaintiff, and was designed to take advantage of a vulnerable family.

114.    Punitive damages would serve the interest of Illinois consumers in that it would serve to deter similar misconduct in the future.

**WHEREFORE**, Plaintiff ELIZABETH DOHENY respectfully requests that this Honorable Court:

a.  Enter judgment in her favor and against Mr. Cooper and Cyprexx;

b.  Award Plaintiff her actual damages;

c.  Award Plaintiff punitive damages;

d.  Award Plaintiff  her reasonable attorney's fees and costs; and

d.  Award Plaintiff any further  relief this Honorable Court deems equitable and just.

16

## COUNT IV – INTRUSION UPON SECLUSION
## (AGAINST MR. COOPER AND CYPREXX)

115.    Plaintiff incorporates all preceding paragraphs as though fully stated herein.

116.    To establish a claim for intrusion upon seclusion, Plaintiff must establish (1) there was an unauthorized intrusion into seclusion; (2) the intrusion would be highly offensive to a reasonable person; (3) the matter intruded upon was private; and (4) the intrusion caused anguish and suffering. *Maremont v. Susan Fredman Design Group, Ltd.,* 2011 U.S. Dist. LEXIS 140446, at *20 (N.D. Ill. 2011).

117.    Defendants intruded into Plaintiff's seclusion by forcibly entering Plaintiff's property without authorization, changing the locks, stealing personal property, and inflicting major damage to the subject property.

118.    Defendants' conduct was highly offensive and objectionable to a reasonable person.

119.    As pled above, Plaintiff was severely harmed by Defendants' conduct.

**WHEREFORE**, Plaintiff ELIZABETH DOHENY respectfully requests that this Honorable Court:

    a.    Enter judgment in her favor and against Mr. Cooper and Cyprexx;

    b.    Award Plaintiff her actual damages;

    c.    Award Plaintiff punitive damages; and

    d.    Award Plaintiff any further relief this Honorable Court deems equitable and just.

## COUNT V– INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
## (AGAINST MR. COOPER AND CYPREXX)

120.    Plaintiff incorporates all preceding paragraphs as though fully stated herein.

17

121.     To state a claim for intentional infliction of emotional distress, plaintiff must establish that (1) the defendants' conduct was extreme and outrageous; (2) the defendants either intended to inflict severe emotional distress or knew that there was a high probability that their conduct would do so; and (3) the defendants' conduct actually caused severe emotional distress. *Honaker v. Smith*, 256 F.3d 477, 490 (7th Cir. 2001).

122.     Defendants are liable for intentional infliction of emotional distress because (1) forcibly entering Plaintiff's property and changing the lock without authorization was extreme and outrageous; (2) Defendants knew that forcibly entering Plaintiff's property, changing the lock, stealing personal property, and causing major damage would inflict severe emotional distress on Plaintiff; and (3) Defendants' conduct actually caused Plaintiff severe emotional distress.

123.     In the alternative, Defendants are liable for negligent infliction of emotional distress.

**WHEREFORE**, Plaintiff ELIZABETH DOHENY respectfully requests that this Honorable Court:

      a.     Enter judgment in her favor and against Mr. Cooper and Cyprexx;

      b.     Award Plaintiff her actual damages;

      c.     Award Plaintiff punitive damages; and

      d.     Award Plaintiff any further relief this Honorable Court deems equitable and just.

**Plaintiff demands trial by jury.**

Dated: October 3, 2019

Respectfully Submitted,

/s/ *Mohammed O. Badwan*

Mohammed O. Badwan, Esq.
Joseph S. Davidson, Esq.
Victor Metroff, Esq.
*Counsel for Plaintiff*
Sulaiman Law Group, Ltd.
2500 S. Highland Ave., Ste. 200
Lombard, IL 60148
Phone (630) 575-8180
Fax (630) 575-8188
mbadwan@sulaimanlaw.com
jdavidson@sulaimanlaw.com
vmetroff@sulaimanlaw.com